UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DYKAS,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                   Case No. 1:12-CV-436

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

# STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age on his alleged disability onset date. (Tr. 127). He successfully completed high school and worked previously as a laborer. (Tr. 34-35, 186).

Plaintiff applied for benefits on December 4, 2007, alleging that he had been disabled since October 9, 2007, due to back problems, seizures, and a learning disability. (Tr. 127-29, 185). Plaintiff's applications were denied, after which he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 61-126). On February 16, 2010, Plaintiff appeared before ALJ Daniel Dadabo, with testimony being offered by Plaintiff and vocational expert, Donald Hecker. (Tr. 29-58). In a written decision dated May 28, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 13-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's right shoulder, taken July 22, 2007, revealed "degenerative changes at the acromioclavicular joint with no fracture or dislocation." (Tr. 272). On October 26, 2007, Plaintiff participated in a bone density study the results of which were in the "normal range" with "no evidence of osteoporosis or osteopenia." (Tr. 263). On October 31, 2007, Plaintiff

3

participated in a CT scan of his lumbar spine the results of which revealed: (1) fractures of the left L3 and left L4 transverse processes, with callus formation compatible with fracture healing; (2) minimal retrolisthesis of L5 on S1; (3) mild diffuse disc bulges at the mid to lower lumbar levels; and (4) no significant spinal or neural foraminal stenosis. (Tr. 270).

On November 20, 2007, Plaintiff participated in an EEG examination the results of which were "moderately abnormal...suggestive of a diffuse cerebral dysfunction." (Tr. 320). The reviewing doctor further noted that "[t]he findings are nonspecific and may be seen in a variety of conditions that include toxic-metabolic state, interictal or postictal state. Further clinical correlation is recommended." (Tr. 320). The doctor further noted that Plaintiff's Dilantin level was "elevated." (Tr. 320). A neurological examination conducted the following day revealed that "cerebellar testing is normal" with "no evidence of higher cortical dysfunction." (Tr. 315). The doctor concluded that Plaintiff required an "adjustment" of his seizure medication. (Tr. 315) Treatment notes dated December 7, 2007, indicate that Plaintiff's seizures were "back under control." (Tr. 313).

On February 16, 2008, Plaintiff's sister, Josephine Dykas, completed a report regarding Plaintiff's functioning. (Tr. 198-206). According to Dykas, Plaintiff helps care for his infant child, walks his son to school, and helps his son with his homework. (Tr. 200). Dykas reported that Plaintiff also prepares meals, washes laundry, shop for groceries, and performs "general cleaning and small repairs." (Tr. 201-02). She also reported that Plaintiff watches television, plays "hand held games," and solves word search puzzles. (Tr. 203).

On March 5, 2008, Plaintiff participated in a consultive examination conducted by Dr. Kenneth Levitan. (Tr. 339-42). Plaintiff reported that he was currently experiencing "one [seizure] every 1-1/2 months." (Tr. 339). Plaintiff "denied any mental or emotional problems" and

4

further "denied any history of outpatient psychiatric care or counseling." (Tr. 339). Plaintiff reported that he experiences "lower back pain that radiates down the back of his left leg" and "has difficulty lifting anything." (Tr. 339). When asked about his daily activities, Plaintiff reported that he helps his wife care for their baby, "occasionally cooks," and "helps clean." (Tr. 340). Plaintiff described his mood as "sad," but the results of a mental status examination were otherwise unremarkable. (Tr. 341). Dr. Levitan diagnosed Plaintiff with dysthymia and further observed:

> The claimant is reactively depressed secondary to his physical problems. He reportedly has learning disabilities. He could perform simple and routine tasks. He would have difficulty handling regular work pressure and stress because of his physical problems. He could communicate with co-workers and a supervisor. He could follow and understand instructions, but he could not be relied on to retain them.

(Tr. 341-42).

On August 25, 2008, Plaintiff participated in a "twenty four hour ambulatory EEG" examination the results of which were "normal" with "no clinical event suggestive of seizure or seizure-like activity." (Tr. 390-91).

On September 16, 2008, Plaintiff participated in an MRI examination of his lumbar spine the results of which were "unremarkable." (Tr. 440). On October 14, 2008, Plaintiff participated in a CT examination of his head the results of which were "normal" with "no acute intracranial hemorrhages." (Tr. 430). On March 6, 2009, Plaintiff participated in an MRI examination of his brain the results of which revealed "no acute abnormalities." (Tr. 389).

On April 18, 2009, Plaintiff participated in a sleep study the results of which revealed "obstructive sleep apnea, severe with mild hypoxemia" and "disturbances in sleep structure

5

consistent with sleep disordered breathing." (Tr. 371-79). The doctor administering the study also observed, however, that Plaintiff "had a good response to CPAP" usage. (Tr. 371).

Treatment notes dated June 30, 2009, indicate that Plaintiff's seizures are "currently under good control" with his current medication regimen. (Tr. 384-85). On August 11, 2009, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "mild degenerative changes." (Tr. 408). Treatment notes dated October 28, 2009 indicate that Plaintiff's "seizures are controlled" on his current medication regimen. (Tr. 534). On November 5, 2009, Plaintiff participated in an MRI examination of his brain the results of which revealed "no acute intracranial abnormalities" and specifically no evidence of demyelinating disease, mesial temporal sclerosis, cortical dysplasia or gray matter heterotopia. (Tr. 402). Treatment notes dated January 12, 2010, indicate that Plaintiff recently participated in an echocardiogram and peripheral vascular study both of which were "normal." (Tr. 544).

On February 11, 2010, Plaintiff participated in a consultive examination conducted by Brett Lincoln, Ed.D. (Tr. 541-43). Plaintiff reported that he was experiencing lower back pain as well as seizures. (Tr. 541). Plaintiff also reported that "he cannot read and if he writes down things he cannot read what he has written." (Tr. 541). Plaintiff participated in intelligence testing the results of which revealed that he possessed a verbal IQ of 65, performance IQ of 81, and a full-scale IQ of 70, which "place[d] [Plaintiff] in the borderline range of intellectual functioning." (Tr. 541). The doctor diagnosed Plaintiff with dysthymic disorder, mental retardation and learning disabilities, and epilepsy. (Tr. 543).

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) seizures; (2) obesity; (3) sleep apnea; (4) hypertension; (5) mild coronary artery disease; (6) L3-L5 transverse fractures; (7) lumbar spondylosis; (8) mild lumbar degenerative changes; (9) borderline intellectual functioning; (10) dysthymia; and (11) possible attention deficit hyperactivity disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-19).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform medium work[2] subject to the following limitations: (1) he cannot operate machinery or work with heavy equipment; (2) he cannot work at unprotected heights; (3) he can only perform work which is "learnable on short demonstration" and that does not require frequent communication or team work. (Tr. 19).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden.

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

*O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Donald Hecker.

The vocational expert testified that there existed approximately 18,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 50-51). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to benefits.

> a. Plaintiff does not meet the requirements of section 12.05 of the Listing of Impairments

Plaintiff asserts that he is entitled to disability benefits because he satisfies the requirements of section 12.05 (Mental Retardation) of the Listing of Impairments. The ALJ found that Plaintiff's impairments did not meet the requirements of this (or any other) listing.

Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

9

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

OR

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

   1. Marked restriction of activities of daily living; or

   2. Marked difficulties in maintaining social functioning; or

   3. Marked difficulties in maintaining concentration, persistence or pace; or

   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05.

Specifically, Plaintiff asserts that he satisfies sections 12.05(C) and 12.05(D). As noted above, testing revealed that Plaintiff possesses a verbal IQ of 65 and a full-scale IQ of 70.

That this test was not administered until after Plaintiff attained the age of 22 is of no consequence. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (in analyzing a claim under section 12.05, the court concluded that "absent evidence of sudden trauma that can cause retardation," IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life). Moreover, Plaintiff suffers from a physical impairment which imposes additional and significant work-related limitations, as evidence by the ALJ's RFC determination.

Even if the Court assumes that Plaintiff satisfies the criteria articulated in subsections (C) and (D), he must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that he satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. *Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007); *see also*, *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from mental retardation prior to the age of 22 or at anytime after age 22. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff was mentally retarded or satisfied the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. While Brett Lincoln diagnosed Plaintiff as suffering from mental retardation, the results of intelligence testing

11

administered by Lincoln revealed instead that Plaintiff suffers from borderline intellectual functioning. (Tr. 541-42). Dr. Havens also reviewed the evidence and concluded that Plaintiff did not suffer from mental retardation. (Tr. 347-60). As the ALJ concluded, the evidence supports the conclusion that Plaintiff suffers not from mental retardation, but from borderline intellectual functioning. As the Sixth Circuit has observed, a diagnosis of borderline intellectual functioning is inconsistent with a diagnosis of mental retardation and, therefore, precludes a finding that the requirements of Section 12.05 have been met. *See Cooper*, 217 Fed. Appx. at 451.

Plaintiff's activities likewise fail to support his argument that he satisfies Section 12.05. Plaintiff has maintained employment throughout most of his adult life. (Tr. 36-37, 136-80). The record further reveals that Plaintiff engages in a range of activities inconsistent with the conclusion that he is mentally retarded. Plaintiff helps care for his children, helps his son with his homework, prepares meals, washes laundry, shop for groceries, and performs "general cleaning and small repairs." Plaintiff also watches television, plays "hand held games," and solves word search puzzles. Such facts indicate that Plaintiff did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant with a 10th grade education, who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart

P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment).

The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated in detail the evidence of record and determined that Plaintiff failed to meet his burden in this regard. The ALJ's decision is supported by substantial evidence.

b. The ALJ's RFC determination is Supported by Substantial Evidence

Plaintiff next argues that the ALJ's RFC determination is deficient because it "does not reflect other, significant limitations." Specifically, Plaintiff argues that the ALJ failed to adequately consider the effects of his seizure disorder or the impact of his sleep apnea and back pain.

When assessing a claimant's RFC, the ALJ is required to "assess [the claimant's] work-related abilities on a function-by-function basis." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996). As the Sixth Circuit has recognized, however, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir., Mar. 4, 2002). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

The ALJ discussed at length the evidence of record and how such supported his RFC determination. As the ALJ observed, Plaintiff's seizures are well controlled with medication.

13

Plaintiff testified at the administrative hearing that he had not experienced a seizure in eight months. (Tr. 39). Plaintiff testified that he "doze[s] off five or six times a day," but the doctor that administered Plaintiff's sleep study examination reported that Plaintiff "had a good response to CPAP" usage. The medical record likewise does not support Plaintiff's subjective allegations in this regard. Thus, the ALJ concluded that Plaintiff's "asserted daytime hypersomnolence is not well-supported." (Tr. 21). As for Plaintiff's back impairments, noting that the medical evidence, as well as Plaintiff's reported activities, do not support Plaintiff's allegations of extreme pain and limitation, the ALJ discounted such. In sum, the ALJ's RFC determination is supported by substantial evidence and, therefore, this particular argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 3, 2013         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge